1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DANNY JAMES COHEA,

11              Plaintiff,                    No. CIV S-00-2799 FCD PAN P

12        vs.

13   CHERYL K. PLILER, WARDEN,
     et al.,
14
                Defendants.                   FINDINGS & RECOMMENDATIONS
15   _____/

16            Plaintiff is a state prisoner serving a life term proceeding without counsel in this

17   civil rights action.  <u>See</u> 42 U.S.C. § 1983.

18                              PROCEDURAL HISTORY

19            This action proceeds on plaintiff's July 11, 2003, second-amended complaint.

20   June 25, 2004, defendants moved to dismiss and for summary judgment.  <u>See</u> Fed. R. Civ. P. 12,

21   56.  February 23, 2005, the court denied both motions without prejudice.

22            April 12, 2005, defendants moved anew for dismissal upon the grounds plaintiff

23   failed to exhaust available administrative remedies, certain claims are untimely, and plaintiff fails

24   to state a claim upon which relief can be granted.  <u>See</u> Fed. R. Civ. P. 12.  June 2, 2005, plaintiff

25   opposed.

26   ///

                                          1

PLAINTIFF'S CLAIMS

**Access to the Courts**

Plaintiff alleges that April 26, 1996, the United States District Court in the Central District of California dismissed his petition for a writ of habeas corpus upon the ground it contained both exhausted and unexhausted claims.   On August 22, 1997, he filed a new habeas petition in the Central District August 28, 1997.   Plaintiff asserts defendant Pliler enacted and enforced various policies and decisions, including permitting only three hours of library and yard time, insufficient books, forms and other materials, a lockdown followed by a reduction in library time, and plaintiff's assignment to vocational responsibilities, all of which interfered with plaintiff's time in the law library.  Plaintiff alleges these policies and decisions denied him meaningful access to the law library and so the Central District denied relief July 13, 1998.

**Retaliation**

Plaintiff alleges that (1)  January 24, 2001, J. Scogin, S. Flory, and G. Kelly failed to pack plaintiff's legal and religious books and broke plaintiff's television when plaintiff was transferred from one cell to another  in retaliation for plaintiff's resort to the appeals process;  (2) March 3, 1997, defendant M.A. Michaels refused to consider exculpatory evidence and found plaintiff guilty of a false report because plaintiff filed an administrative appeal December 5, 1995; (3) defendant Colvin filed false rules violation reports January 14, 1998, February 10, 1998, February 25, 1998, March 3, 1998, and January 15, 1999, in retaliation for plaintiff's administrative appeals;  (4) S. L. Scarsell endorsed Colvin's February 24, 1998, and January 15, 1999, rules violations reports  in retaliation for plaintiff's resort to the appeals procedure;  (5) March 10, 1998, defendant R. Yamamoto condoned Colvin's March 3, 1998, false rules violation report; (6) March 5, 1998, V. Rendon excluded exculpatory evidence from a rules violation hearing and found plaintiff guilty in retaliation for plaintiff's resort to the appeals process and the federal courts; (7) on April 13, 1998,  S. D. Akins excluded exculpatory evidence from a rules

///

violation hearing and found plaintiff guilty in retaliation for plaintiff's resort to the appeals process and the federal courts.

**Conspiracy**

Plaintiff alleges (1) Colvin and McCargar conspired to file a rules violation report falsely accusing plaintiff of being disrespectful; (2) D. Adams and A. Gold conspired to place falsified rules violation reports into plaintiff's central file so plaintiff would be removed from his vocational assignment and would be placed in an isolated cell to prevent plaintiff from litigating his habeas corpus and civil rights actions in state and federal courts;  (3) defendants D. White, D. Sims, R. Sanders, T. L. Rosario, S. Flory, Scogin, and G. Kelly conspired to place a rules violation report containing false allegations in plaintiff's central file to have plaintiff removed from the institution's B-Facility to the C-Facility;  (3)  January 29, 2001, S. Adcock, R. Hill, T. Rosario and R. Sanders conspired to file a rules violation report falsely accusing plaintiff of indecent exposure; (4) J. Colvin, D. McCargar, S.L. Scarsella, D. Baughman, M. A. Michaels, R. Yamamoto, V. Rendon and S. D. Akins conspired to place rules violation reports containing false allegations in plaintiff's central file.

**Due Process**

Plaintiff alleges:  (1) August 8, 2000, D. Adams filed a rules violation report falsely accusing plaintiff of indecent exposure; (2) August 18, 2000, D. Adams filed a rules violation report falsely accusing plaintiff of appearing to threaten her; (3) August 18, 2000, D. Adams filed a rules violation report falsely accusing plaintiff of refusing to follow directions; (4) August 21, 2000, D. Adams filed a rules violation report requiring plaintiff be removed from the vocational program; (5) September 24, 2000, A. Gold excluded exculpatory evidence from a hearing and found plaintiff guilty of D. Adams' August 18, 2000, report.

 ///

///

///

3

1                             MOTION TO DISMISS

2 **Failure to Exhaust**

3           On a motion to dismiss for failure to exhaust available administrative remedies,

4 the court may look beyond the pleadings and decide disputed facts.  Wyatt v. Terhune, 315 F.3d

5 1108 (9th Cir. 2002).  A prisoner may bring no § 1983 action until he has exhausted such

6 administrative remedies as are available.  42 U.S.C. § 1997e(a).   The requirement is mandatory.

7 Booth v. Churner, 532 U.S. 731, 741 (2001).  The administrative remedy must be exhausted

8 before suit is brought and a prisoner is not entitled to a stay of judicial proceedings in order to

9 exhaust. McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

10           California prisoners may appeal "any departmental decision, action, condition, or

11 policy which they can demonstrate as having an adverse effect upon their welfare."  15 Cal.

12 Admin. Code § 3084.1(a).  The regulations require the use of specific forms but contain no

13 guidelines for grievance content.  15 Cal. Admin. Code §§ 3084.2, 3085 (designating use of CDC

14 Form 602 Inmate/Parolee Appeal Form for all grievances except those related to disabilities

15 under the Americans with Disabilities Act, which are filed on CDC Form 1824, Reasonable

16 Modification or Accommodation Request).  Prisoners ordinarily must present their allegations on

17 one informal and three formal three formal levels of review.  15 Cal. Admin. Code § 3084.5.

18 While presentation on the third level, the Director's Level of Review, exhausts the remedy for

19 departmental purposes,  15 Cal. Admin. Code § 3084.1(a), when prisoners cannot present their

20 allegations on any subsequent level, they have exhausted available remedies for purposes of 42

21 U.S.C. § 1997e(a).  Ngo v. Woodford, 403 F.3d 620 (9th Cir. 2005).  A California prisoner who

22 correctly completes an appeal form provided by prison officials provides information adequate to

23 exhaust the administrative remedy.  See Butler v. Adams, 397 F.3d 1181 (9th Cir. 2005) (error to

24 dismiss complaint for failure to identify defendants in administrative form because the form

25 provided by the prison did not require such identification).  Defendant has the burden of

26 identifying the remedies that remain available.  Ibid.

1   October 18, 2000, plaintiff submitted a grievance complaining he was denied yard

2   time four days that month and since he could use the law library only during yard time, he also

3   was denied time in the law library.  The appeal was denied on the Director's Level of Review

4   November 2, 2001.

5   March 26, 2001, plaintiff filed a grievance complaining prison staff destroyed his

6   television.  The appeal was denied on the Director's Level of Review December 20, 2001.

7   April 18, 2001, plaintiff submitted a grievance complaining Adcock made a rules

8   violation report falsely accusing him of misconduct, Adcock and others conspired falsely to

9   respond to investigative questions and that the hearing officer refused to let plaintiff question

10  officers or call witnesses to testify on plaintiff's behalf.  The appeal was denied on the Director's

11  Level of Review January 22, 2002.

12  Defendants maintain records of appeals for five years from the date of the

13  decision on the Director's Level of Review and so Pliler concedes any grievance plaintiff filed in

14  1998 would have been destroyed before she filed her motion. Accordingly, she cannot

15  demonstrate plaintiff failed to exhaust this claim.

16  Pliler's motion on this ground should be denied.

17  For like reason, the court cannot find plaintiff failed to exhaust the following

18  claims: March 3, 1997, M.A. Michaels refused to consider exculpatory evidence and found

19  plaintiff guilty of a rules violation report in retaliation for plaintiff's December 5, 1995,

20  administrative appeal; defendant Colvin filed false rules violation reports January 14, 1998,

21  February 10, 1998, February 25, 1998, March 3, 1998 and January 15, 1998, in retaliation for

22  plaintiff's resort to the appeals process; March 10, 1993, R. Yamamoto approved Colvin's false

23  reports to retaliate against plaintiff; March 5, 1998, V. Rendon excluded exculpatory evidence

24  and found plaintiff guilty at a hearing on a rules violation report to retaliate against plaintiff;

25  April 13, 1998, D. Akins excluded exculpatory evidence from a rules violation hearing and found

26  plaintiff guilty in retaliation for plaintiff's resort to the appeals process and to the federal courts.

1    Defendants' exhibits show plaintiff exhausted the claims staff destroyed his

2  television, Adcock falsely accused him of misconduct and conspired with others falsely to

3  respond to investigative questions and that the hearing officer denied plaintiff due process, and

4  he was denied access to the courts in October 2000.  But plaintiff filed the complaint December

5  27, 2000, before completing the appeals process.

6    Since plaintiff did not exhaust these claims before commencing this action, they

7  should be dismissed without prejudice.

8    Defendants adduce no evidence showing plaintiff failed to exhaust the other

9  claims and so they should not be dismissed on this ground.

10 **Statute of Limitations**

11    The court may dismiss an action as untimely on a motion to dismiss pursuant to

12 Rule 12(b) of the Rules of Federal Civil Procedure insofar as the pleadings demonstrate

13 untimeliness.  See Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980).  Insofar as the

14 court considers papers outside the pleadings, the court must treat the motion as one for summary

15 judgment.  Jablon, 614 F.2d at 682.

16    SUMMARY JUDGMENT STANDARDS UNDER RULE 56

17    Summary judgment is appropriate when it is demonstrated that there exists "no

18 genuine issue as to any material fact and that the moving party is entitled to a judgment as a

19 matter of law."  Fed. R. Civ. P. 56(c).

20    Under summary judgment practice, the moving party

21    always bears the initial responsibility of informing the district court
     of the basis for its motion, and identifying those portions of "the
22    pleadings, depositions, answers to interrogatories, and admissions
     on file, together with the affidavits, if any," which it believes
23    demonstrate the absence of a genuine issue of material fact.

24 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

25 nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

26 judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

6

1    to interrogatories, and admissions on file.'"  Id.  Summary judgment should be entered, after

2    adequate time for discovery and upon motion, against a party who fails to make a showing

3    sufficient to establish the existence of an element essential to that party's case and on which that

4    party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

5    concerning an essential element of the nonmoving party's case necessarily renders all other facts

6    immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

7    whatever is before the district court demonstrates that the standard for entry of summary

8    judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

9            If the moving party meets its initial responsibility, the burden shifts to the

10   opposing party to establish the existence of a genuine issue as to any material fact.  See

11   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In  attempting to

12   satisfy its burden, the opposing party may not rely upon the allegations or denials of its pleadings,

13   but must tender evidence of specific facts in the form of affidavits, and/or admissible discovery

14   material in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e);

15   Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate the fact in contention is

16   material, i.e., it might affect the outcome of the suit under the governing law, see Anderson v.

17   Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors

18   Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., a reasonable jury

19   could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d

20   1433, 1436 (9th Cir. 1987).

21           In the endeavor to establish the existence of a factual dispute, the opposing party

22   need not conclusively establish a material issue of fact favoring its position.  It is sufficient that

23   "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

24   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

25   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

26   ///

1  genuine need for trial.'"  <u>Matsushita</u>, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

2  committee's note on 1963 amendments).

3          In resolving the motion, the court examines the pleadings, depositions, answers to

4  interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).

5  The evidence of the opposing party is to be believed.  <u>See</u> <u>Anderson</u>, 477 U.S. at 255.  All

6  reasonable inferences that may be drawn from the facts before the court must be drawn in favor

7  of the opposing party.  <u>See</u> <u>Matsushita</u>, 475 U.S. at 587.  Nevertheless, inferences are not drawn

8  out of the air, and it is the opposing party's obligation to produce a factual predicate from which

9  the inference may be drawn.  <u>See</u> <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45

10 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine

11 issue, the opposing party "must do more than simply show that there is some metaphysical doubt

12 as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of

13 fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  <u>Matsushita</u>, 475 U.S.

14 at 587 (citation omitted).

15         On September 23, 2003, the court advised plaintiff of the requirements for

16 opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  <u>See</u> <u>Rand v.</u>

17 <u>Rowland</u>, 154 F.3d 952, 957 (9th Cir. 1998) (en banc),  <u>cert.</u> <u>denied</u>, 527 U.S. 1035 (1999), and

18 <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988).

19 **Statute of Limitations Law[1]**

20

21 [1] The law of the forum state determines the limitation period for actions brought under 42 U.S.C. § 1983. <u>Wilson v. Garcia</u>, 471 U.S. 261, 276 (1995).  Federal law governs when a claim accrues, <u>see</u> <u>Elliott v. City of Union City</u>, 25 F.3d 800, 801-02 (9th Cir. 1994), and the forum state's law governs tolling as long as application of state law does not defeat federal goals of the statute at issue, <u>see</u> <u>Hardin v. Straub</u>, 490 U.S. 536, 537-39 (1989); <u>Bacon v. City of Los Angeles,</u> 843 F.2d 372, 374 (9th Cir. 1988); <u>Jones v. Blanas</u>, 393 F.3d 918 (9th Cir. 2004).  Since California's rule permitting equitable tolling for the time a plaintiff pursues an alternative remedy does not defeat the purpose of the federal exhaustion requirement, plaintiff is entitled to tolling for time he spent pursuing available administrative remedies.  <u>See</u> <u>Porter v. Nussle</u>, 534 U.S. 516 (2002) (42 U.S.C. § 1997e(a) encourages resolution of claims without litigation and allows development of a record that can assist a federal court in resolving claims in the event of a civil action); <u>see also</u> <u>Addison v. State</u>, 146 Cal.Rptr. 224 (Cal. 1978) (California's limitations periods seek to prevent plaintiffs from inexcusably delaying commencement of an action such that the claims become stale and so where a plaintiff delays commencing an action while reasonably and in good faith pursuing an alternative

1          Absent tolling, a plaintiff must file an action under 42 U.S.C. § 1983 one year

2   from when the claim accrues.[2] Cal. Code Civ. P. § 340(3) (West Supp. 2002).  A claim accrues

3   when the plaintiff knows, or should know, of the injury which is the basis of the cause of action.

4   See Kimes v. Stone, 84 F.3d 1121, 1128 (9th Cir. 1996).  This action commenced December 27,

5   2000, when plaintiff filed a complaint.  See Cal. Civ. Code § 350.

6          Defendant Pliler contends plaintiff's claim she denied him meaningful access to

7   the courts is untimely.

8          Plaintiff's cause of action against defendant Pliler accrued July 13, 1998, when

9   the District Court denied relief on his habeas petition.  Absent tolling, he had until July 13, 1999,

10  to file a civil rights action.

11         Since defendant Pliler has not adduced evidence on the question of whether plaintiff

12  pursued administrative remedies, or if he did how long it took, there is a genuine dispute about

13  whether the claim untimely.  See Jones v. Blanas, 393 F.3d 918, 927  (9th Cir. 2004) .  Pliler is not

14  entitled to judgment as a matter of law.

15         Pliler's motion on this ground should be denied.

16         For like reasons, the following defendants are not entitled to judgment as a matter of

17  law: (1) Colvin on the claim he allegedly retaliated against plaintiff February 27, 1997, January 14,

18  1998, February 10, 1998, February 24, 1998,  March 3, 1998, and January 15, 1998;  (2) Michaels

19  on the claim he retaliated against plaintiff March 3, 1997; (3) Scarsella on the claim he retaliated

20  February 27, 1998, and January 21, 1999; (4) Yamamoto for allegedly retaliating March 10, 1998;

21  (5) Rendon for retaliating March 5 and 15, 1998; (6) Akin for violating due process April 13, 1998.

22

23  remedy, time for commencing an action equitably is tolled); see also Dillon v. Board of Pension Commrs. 18 Cal.2d
    427 (Cal. 1941) (doctrine of equitable tolling applies whenever exhaustion of administrative remedies is a
24  prerequisite to commencing a civil action).

25      [2] On January 1, 2003, a two-year limitation period for personal injury actions became law.  Cal. Code. Civ.
    Pro. § 335.1; Abreu v. Ramirez, 284 F.Supp.2d 1250 (C.D. Cal. 2003).  While defendants' argument depends upon
    the new limitation period, it does not apply to plaintiff because his cause of action accrued before it became law.
26  Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004) (new statute of limitations does not apply retroactively).

**Failure to State a Claim**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept plaintiff's allegations as true, read the complaint most favorably to plaintiff, give plaintiff the benefit of every reasonable inference that appears from the pleading and argument of the case and dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Wheeldin v. Wheeler, 373 U.S. 647, 658 (1963); Retail Clerks International Association, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 754 n.6 (1963); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). The court may consider documents attached to the complaint in evaluating a motion to dismiss. Parks School of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).

Defendant Pliler asserts plaintiff has failed to state a claim she violated plaintiff's right of access to the courts.

To state a claim, plaintiff must allege that on a specific day an identified state actor refused to assist plaintiff prepare and file a habeas corpus petition or section 1983 complaint either by allowing meaningful access to an adequate law library or assistance from persons trained in the law and that the deprivation caused a specific, actual injury to the prisoner's habeas or section 1983 litigation efforts. Lewis v. Casey, 518 U.S. 343 (1996). The right guarantees "meaningful access to the courts" but does not guarantee the ability "to litigate effectively once in court." Lewis, 518 U.S. at 354. Access is meaningful if prisons provide tools necessary to bring non-frivolous claims challenging their convictions directly or collaterally and to challenge the conditions of their confinement. Id. at 356.

Plaintiff alleges that April 26, 1996, the United States District Court in the Central District of California dismissed his petition for a writ of habeas corpus upon the ground it contained both exhausted and unexhausted claims, August 22, 1997, he filed a new habeas petition in the Central District, and August 27, 1997, that court dismissed the petition with leave to amend. Plaintiff filed an amended petition and the court denied relief on the merits February 13, 1998.

Plaintiff asserts that between April 26, 1996, and February 13, 1998, defendant Pliler enacted and enforced various policies and decisions, including permitting only three hours of library and yard time, insufficient books, forms and other materials, a lockdown followed by a reduction in library time, and plaintiff's assignment to vocational responsibilities, all of which interfered with plaintiff's time in the law library.  Plaintiff alleges these policies and decisions denied him meaningful access to the law library, resulting in the February 13, 1998, denial of relief.

These allegations show plaintiff navigated federal habeas corpus procedure and obtained a ruling on the merits.  Plaintiff's remedy for disagreement with the outcome was to appeal. Plaintiff fails to state a claim upon which relief can be granted.

Relying upon  Heck v. Humphrey, 512 U.S. 477 (1984), defendants seek an order striking plaintiff's request for an order expunging the allegedly false rules violations reports.

The sole remedy in federal court for a prisoner seeking release from custody is to petition for a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475 (1973).  Therefore, to obtain declaratory or injunctive relief for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  Heck v. Humphrey, 512 U.S. 477 (1994); Edwards v. Balisok, 520 U.S. 641, 648 (1997).  Habeas corpus may provide appropriate relief when a prisoner seeks to expunge a disciplinary finding from his record "if expungement is likely to accelerate the prisoner's eligibility for parole." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (assuming habeas corpus jurisdiction where disciplinary sanctions involved forfeiture of good time credit or segregation).  Otherwise, a prisoner may seek relief under 42 U.S.C. § 1983. Burnsworth v. Gunderson, 179 F.3d 771 (9th Cir. 1999) (where after hearing there is no evidence to support finding of guilt, prisoner may seek an order of expungement pursuant to 42 U.S.C. § 1983).

1    Plaintiff alleges D. Adams filed four rules violation reports making false charges

2  against plaintiff.  He asserts that at one hearing A. Gold excluded exculpatory evidence from the

3  disciplinary hearing and so plaintiff was found guilty.  Nowhere does plaintiff allege defendants

4  revoked good-time credits and he does not seek restoration of any such credits.

5    Plaintiff's allegations state a cognizable claim for relief pursuant to 42 U.S.C. § 1983.

6  Defendants' motion on this ground should be denied.

7  **Sua Sponte Dismissal**

8    Pursuant to 42 U.S.C. § 1997e(c)(1),

9    The court shall on its own motion or on the motion of a party dismiss any action
   brought with respect to prison conditions under section 1983 of this title, or any other
10   Federal law, by a prisoner confined in any jail, prison, or other correctional facility
   if the court is satisfied that the action is frivolous, malicious, fails to state a claim
11   upon which relief can be granted, or seeks monetary relief from a defendant who is
   immune from such relief.

12

13    To state a claim for conspiracy, plaintiff must allege two or more people intended to

14  agree unlawfully to cause plaintiff harm and took some concerted action in furtherance of that goal.

15  Gilbrook v. City of Westminster, 177 F.3d 839   (9th Cir. 1999).  A mere allegation of conspiracy

16  without factual specificity is insufficient.  Karim-Panahi v. Los Angeles Police Department, 839 F.2d

17  621 (9th Cir. 1988).

18    Plaintiff alleges (1) Colvin and McCargar conspired to file a false rules violation

19  report stating plaintiff had been disrespectful; (2) D. Adams and A. Gold conspired to place falsified

20  rules violation reports into plaintiff's central file so plaintiff would be removed from his vocational

21  assignment and would be placed in an isolated cell to prevent plaintiff from litigating his habeas

22  corpus and civil rights actions in state and federal courts;  (3) defendants D. White, D. Sims, R.

23  Sanders, T. L. Rosario, S. Flory, Scogin, and G. Kelly conspired to place a false rules violation report

24  in plaintiff's central file; (3)  January 29, 2001, S. Adcock, R. Hill, T. Rosario and R. Sanders

25  conspired to file disciplinary report falsely accusing plaintiff of indecent exposure; (4) J. Colvin, D.

26  ///

1    McCargar, S.L. Scarsella, D. Baughman, M. A. Michaels, R. Yamamoto, V. Rendon and S. D. Akins
2    conspired to place false rules violation reports in plaintiff's central file.

3              These allegations are insufficient to state any claim for conspiracy.

4              These claims should be dismissed with leave to amend.

5              Accordingly, IT IS HEREBY RECOMMENDED that the court rule on defendants'
6    April 12, 2005, motion as follows:

7              1.    The motion to dismiss upon the ground plaintiff failed to exhaust available
8    administrative remedies made upon behalf of defendants Pliler, M.A. Michaels, Colvin, R.
9    Yamamoto, V. Rendon and D. Akins be denied as explained above;

10             2.    The motion to dismiss upon the ground plaintiff failed to exhaust available
11   administrative remedies on the claim Adcock falsely accused plaintiff of misconduct and conspired
12   with others to violate due process be granted without prejudice;

13             3.    The motion to dismiss upon the ground plaintiff untimely commenced this action
14   be denied;

15             4.    Pliler's motion to dismiss for failure to state a claim upon which relief can be
16   granted be granted;

17             5.    The motion to dismiss plaintiff's due process claims be denied;

18             6.    Plaintiff's conspiracy claims be dismissed with leave to amend; and,

19             7.    Defendants be directed to file and serve an answer.

20             These findings and recommendations are submitted to the United States District
21   Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after
22   being served with these findings and recommendations, any party may file written objections with
23   the court.  The document should be captioned "Objections to Magistrate Judge's Findings and
24   /////
25   /////
26   /////

Recommendations."   Failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 6, 2006.

UNITED STATES MAGISTRATE JUDGE

\004
\cohe2799.msj f&r

14