1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DANNY JAMES COHEA,

11              Plaintiff,                    No. 2:00-cv-2799 GEB EFB P

12        vs.

13   CHERYL K. PLILER, WARDEN, et al.,

14              Defendants.                   FINDINGS AND RECOMMENDATIONS
     _____/

15

16        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  The remaining defendants in this case, i.e, Adams, Akin, Baughman, Colvin,

18   Gold, McCargar, Micheels, Rendon, Scarsella, and Yamamoto move for summary judgment

19   under Fed. R. Civ. P. 56.  Dckt. No. 213.  Defendants also ask the court to find that plaintiff is a

20   vexatious litigant and require that he post security.  Dckt. No. 217.[1]

21   _____

22        [1] Defendants' motions, originally filed on March 28, 2011, were re-filed and re-served on
     August 30, 2012, in accordance with the court's August 1, 2012 order.  Dckt. No. 212.  That
23   order directed defendants to re-serve the motions along with notice to plaintiff as required by
     *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012).  The August 1, 2012 order informed plaintiff that
24   if he did not file an amended opposition within thirty days of the re-filed motions, the court
     would consider his previously-filed oppositions in resolving the motions.  Plaintiff objected to
25   that order, asserting that he already had sufficient notice of his obligations in opposing the
     motion for summary judgment.  He asked that the order be vacated and any re-filed motions
26   stricken.  Dckt. No. 220.  In essence, plaintiff asks that the court consider the motions as they
     existed prior to *Woods*.  However, the only change occasioned  in defendants' motions by the

For the reasons that follow, the motion for summary judgment must be granted in part and denied in part. The undersigned further recommends that the court deny defendants' motion to declare plaintiff a vexatious litigant.

I.      **Background**

This action proceeds on the third amended complaint filed November 30, 2006. Dckt. No. 122. Plaintiff alleges that, between 1997 and 2000, defendants retaliated against him for filing grievances and lawsuits by instituting false disciplinary charges against him.[2] He seeks declaratory, injunctive, and monetary relief. Dckt. No. 122 at 20-22. Defendants provide the following relevant factual background, which is not disputed by plaintiff:

From July 21, 1994 to October 26, 2004, plaintiff resided at California State Prison - Sacramento ("CSP-Sac"). Defs.' Sep. Statement of Undisputed Material Facts ISO Defs.' Mot. for Summ. J. (hereinafter "DUF") 1. On September 27, 1997, defendant McCargar, senior librarian at CSP-Sac, filed a "Rules Violation Report" ("RVR") against plaintiff for disrespect (RVR #97-02-10). DUF 2. Defendant Baughman, defendant McCargar's supervisor, reviewed and signed off on the RVR. DUF 3. Defendant Micheels conducted a hearing on the RVR and found plaintiff guilty of disrespect. DUF 4. Plaintiff was counseled and reprimanded. *Id.*

On February 24, 1998, defendant Colvin, a correctional officer at CSP-Sac, filed RVR #98-02-84 against plaintiff for manipulating and threatening staff. DUF 5. Defendant Scarsella, defendant Colvin's supervisor, reviewed and signed off on the RVR. DUF 6. Defendant Rendon conducted a hearing on the RVR and found plaintiff guilty of manipulating and

August 1, 2012 order is the inclusion of the notice required by *Woods*. Plaintiff may not have wanted to receive redundant notification, but he has suffered no prejudice from the court's, and defendants', compliance with the Ninth Circuit's requirement in *Woods*. Accordingly, plaintiff's request to strike is denied. Per the August 1, 2012 order, the court considers plaintiff's already-filed oppositions in resolving those motions.

[2] Plaintiff states that he alleges retaliation between 1995 and 2000, not 1997 and 2000. The court has reviewed plaintiff's third amended complaint, which reveals that the allegedly retaliatory disciplinary charges were instituted between 1997 and 2000. Dckt. No. 122 at 10-16.

threatening staff.  DUF 7.  Plaintiff was assessed a thirty-day loss of good-time credits.  *Id.*

On March 3, 1998, defendant Colvin filed RVR #98-03-50 against plaintiff for unlawful influence.  DUF 8.  Defendant Yamamoto, defendant Colvin's supervisor, reviewed and signed off on the RVR.  DUF 9.  Defendant Akin conducted a hearing on the RVR and found plaintiff guilty of not promptly obeying orders.  DUF 10.  Plaintiff was counseled and reprimanded.  *Id.*

On August 18, 2000, defendant Adams, a correctional officer at CSP-Sac, filed RVR #00-08-059 against plaintiff for not following directions.  DUF 11.  Defendant Gold conducted the hearing for the RVR and found plaintiff guilty of not following orders.  DUF 12.  Plaintiff was assessed a loss of yard privileges for one weekend.  *Id.*

## II.     Motion for Summary Judgment

### A.  Standards

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting

1    the basis for its motion and identifying those portions of the record, together with affidavits, if

2    any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477

3    U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

4    party meets its burden with a properly supported motion, the burden then shifts to the opposing

5    party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

6    *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

7          A clear focus on where the burden of proof lies as to the factual issue in question is

8    crucial to summary judgment procedures.  Depending on which party bears that burden, the party

9    seeking summary judgment does not necessarily need to submit any evidence of its own.  When

10   the opposing party would have the burden of proof on a dispositive issue at trial, the moving

11   party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

12   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

13   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

14   24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

15   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

16   depositions, answers to interrogatories, and admissions on file.'")  Indeed, summary judgment

17   should be entered, after adequate time for discovery and upon motion, against a party who fails

18   to make a showing sufficient to establish the existence of an element essential to that party's

19   case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

20   circumstance, summary judgment must be granted, "so long as whatever is before the district

21   court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is

22   satisfied."  *Id.* at 323.

23         To defeat summary judgment the opposing party must establish a genuine dispute as to a

24   material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

25   that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S.

26   at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand,"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*,

475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.  Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

The court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure on September 23, 2003, Dckt. No. 29, and again on August 1, 2012, when it ordered defendants to reserve the motion with the required *Woods* notice.  Dckt. No. 212; *see* n. 1 *supra.*

**B.  Analysis**

The court must preliminarily dispose of two procedural arguments raised by the parties. First, defendants argue that summary judgment must be entered entirely in their favor because plaintiff has not proffered any evidence in opposition to their motion.  Dckt. No. 209, Defs.' Reply ISO Mot. for Summ. J. at 2-3.  Federal Rule of Civil Procedure 56(e) gives the court considerable discretion regarding the appropriate response when a party fails to properly support an assertion of fact or address another party's assertion of fact.  Under that rule, the court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).  Here, much of defendants' motion is based entirely on legal arguments premised on facts that are not in genuine dispute.  Thus, with the exception of the mootness question addressed below,[3] arguments that summary judgment should be granted because plaintiff failed to provide opposing evidence in support of those undisputed facts misses the point.  Requiring a party to produce evidence as to facts that are not disputed is not only pointless, it simply does not bear upon the resolution of the legal questions on which the

---

[3] Defendants' argument that the declaratory and injunctive relief claims are moot does depend, in part, on the resolution of some facts that, from plaintiff's opposition, appear to be disputed.  That argument, and plaintiff's failure to submit evidence, is addressed below.

1 motion turns.

2    Second, plaintiff argues that defendants have previously been denied summary judgment

3 and should not get another opportunity to seek it. *See* Dckt. Nos. 73, 78. District courts have

4 discretion to entertain successive motions for summary judgment. *Hoffman v. Tonnemacher*,

5 593 F.3d 908, 911 (9th Cir. 2010). "[A]llowing a party to file a second motion for summary

6 judgment is logical, and it fosters the 'just, speedy, and inexpensive' resolutions of suits." *Id.*

7 (quoting Fed. R. Civ. P. 1). Where a second motion seeks, in essence, reconsideration of an

8 earlier ruling the court applies the standards for requesting reconsideration, including Local Rule

9 230 (j). Here, however, while defendants reassert one argument that they raised in the previous

10 motion (i.e., that this action is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), *see* analysis

11 below), they do so based on evidence not available at the time of the prior motion – plaintiff's

12 deposition testimony. Further, since the last motion, plaintiff has filed an amended complaint.

13 Dckt. No. 122. The undersigned has reviewed the docket and finds no support for plaintiff's

14 claim that defendants have filed abusive motions to delay this case. There was nothing

15 inappropriate about the defendants' filing of the instant motion for summary judgment.

16    Moving to the merits of the motion, defendants first argue that the entirety of plaintiff's

17 suit is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994) and *Edwards v. Balisok*, 520 U.S. 641

18 (1997). They note that plaintiff testified at his deposition that his damages claim rests in part on

19 his belief that the inclusion of the allegedly false RVRs in his file caused the state parole

20 authority in 2005 to deny him parole and to decline to provide him parole review for five years.

21 Plaintiff counters that, regardless of what he said at his deposition, his complaint contains no

22 allegation that the RVRs have caused him to suffer a longer period of incarceration than he

23 otherwise would. For the reasons that follow, neither *Heck*, its progeny, nor its predecessor

24 cases bar the entirety of plaintiff's suit, regardless of whether plaintiff contends that RVRs

25 played a role in the parole authority's determination that he was unsuitable for parole.

26 ////

*Heck* is one in a line of cases generally regarded as beginning with *Preiser v. Rodriguez*, 411 U.S. 475 (1973), in which the U.S. Supreme Court determined that state prisoners seeking an injunction restoring good-time credits revoked in disciplinary proceedings must proceed under the federal habeas corpus statute (28 U.S.C. § 2254) rather than via § 1983. The court noted the historic role of the writ of habeas corpus as the vehicle for a confined individual to attack the legality of her custody and obtain release and concluded that, because the habeas statute dealt specifically with such a situation, it must be utilized rather than the more general § 1983 remedies where a prisoner attacks (1) the fact of confinement or (2) the duration of confinement. *Id.* at 484-500.

In *Heck*, the Court further clarified what types of suits may not be brought under § 1983 but must instead be pursued via petition for writ of habeas corpus. 512 U.S. 477 (1994). There, the court held that a state prisoner may not bring a damages claim under § 1983 attacking the constitutionality of his criminal conviction unless and until the underlying conviction is invalidated via habeas corpus or similar proceeding, because success in the § 1983 damages action would necessarily establish the invalidity of the conviction and attendant confinement. *Id.* at 478, 486-87. The Court emphasized that this rule, sometimes referred to as the "favorable termination rule," applies only where success in the civil rights suit would necessarily imply that the conviction or sentence were invalid. *Id.* at 486-87 and n. 6-7.

The Supreme Court took up the interplay between federal civil rights actions and writs of habeas corpus again in *Edwards v. Balisok*, 520 U.S. 641 (1997). In that case, the Court clarified that the favorable termination rule applies to a state inmate who challenges a disciplinary action for which he was assessed a credit loss, even where the inmate seeks no injunction restoring the lost credits, if success in a civil rights action would necessarily imply that the credits should not have been revoked. *Id.* at 643-44, 646-47.

Conversely, in *Muhammad v. Close*, 544 U.S. 749 (2004), an inmate could challenge his pre-disciplinary hearing detention under § 1983 without first invalidating the discipline imposed,

8

because success in the action would not show his underlying criminal conviction to be invalid nor shorten the duration of his sentence by requiring the restoration of revoked credits. The Court clarified that *Heck*'s favorable termination rule does not apply categorically to all suits challenging prison disciplinary proceedings. *Id.* at 754. Prison disciplinary proceedings do not implicate the validity of the "fact of confinement" (*see Preiser*, 411 U.S. at 500) because "these administrative determinations do not as such raise any implication about the validity of the underlying conviction[.]" *Muhammad*, 544 U.S. at 754. Such proceedings *may* implicate the "duration of confinement" (*see Preiser*, 411 U.S. at 500), if credits were revoked. *Muhammad*, 544 U.S. at 754. Because the plaintiff in *Muhammad* lost no credits as a result of the discipline imposed, and because prison disciplinary hearings by their nature do not address the underlying conviction, the plaintiff's § 1983 action could not be "construed as seeking a judgment at odds with his conviction or with the State's calculation of time to be served in accordance with the underlying sentence." *Id.* at 754-55.

In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), the Court surveyed the line of cases beginning with *Preiser* in determining that inmates challenging state parole procedures could proceed under § 1983. While the prisoners' ultimate goal was arguably to obtain speedier release under more favorable parole procedures, their success in obtaining such procedures in their § 1983 suit would not *necessarily* mean speedier release – parole was not guaranteed under the different procedures. *Id.* at 82. The Court emphasized that the favorable termination rule is limited to situations in which success in the § 1983 action would *necessarily* invalidate confinement or its duration. *Id.* at 81-82; *see also Nelson v. Campbell*, 541 U.S. 637, 647 (2004) (noting that the Court has "stress[ed] the importance of the term 'necessarily.'").

The Court reiterated the availability of § 1983 where success in the suit would not necessarily invalidate the prisoner's underlying conviction nor shorten his sentence in *Skinner v. Switzer*, ___ U.S. ___, 131 S. Ct. 1289, 1298-99 (2011). There, it held that a state prisoner seeking DNA testing of crime-scene evidence could assert his claim under § 1983, even though

his ultimate aim was to use the evidence to support a claim of innocence. *Id.* at 1293. Success in the § 1983 suit would only provide the inmate with access to the DNA evidence, which could prove to be inculpatory, exculpatory, or neither. *Id.* The Court noted that none of its cases "has recognized habeas as the sole remedy, or even an available one, where the relief sought would neither terminate custody, accelerate the future date of release from custody, nor reduce the level of custody." *Id.* at 1299 (citing *Wilkinson*, 544 U.S. at 86, Scalia, J., concurring, internal quotation marks omitted) & 1299 n.13.

Returning to the facts of this case, even if plaintiff claims that he would have a more favorable shot at parole without the allegedly false RVRs, their expungement would not *necessarily* result in parole being granted. *See* Cal. Code Regs. tit. 15, § 2281 (providing a host of considerations guiding the determination of whether a California life prisoner is suitable for parole). Thus, under *Wilkinson*, *Nelson*, and *Skinner*, plaintiff's claim is not barred by *Heck*.

Defendants rely heavily on *Butterfield v. Bail*, 120 F.3d 1023 (9th Cir. 1997) in arguing that the favorable termination rule of *Heck* bars plaintiff's claim. In *Butterfield*, the court of appeals held that an inmate's § 1983 action alleging that defendants had unlawfully relied on false information in plaintiff's prison file to deny parole was barred by *Heck*, because the inmate ultimately sought parole and would not challenge the alleged procedural defects at his parole hearing if he did not believe that, were those defects remedied, he would be paroled. 120 F.3d at 1025. *Butterfield* is inconsistent with the later-decided U.S. Supreme Court case of *Wilkinson*, however, which, as summarized above, expressly found that a challenge to parole procedures was cognizable under § 1983 without a prior favorable habeas petition. *Wilkinson* and the other relevant Supreme Court cases since *Butterfield* make clear that the favorable termination rule does not apply to § 1983 claims where success on the claims would not *necessarily* show the inmate's criminal conviction or sentence to be invalid. Here, success on plaintiff's claims will not necessarily result in his being paroled earlier than he otherwise would be and, under controlling Supreme Court precedent, summary judgment cannot be granted in favor of

1   defendants on this argument.

2        Plaintiff does, however, assert one claim that is barred by *Heck*.  He claims that

3   defendants Colvin's RVR of February 24, 1998 was false and retaliatory, that defendant

4   Scarsella endorsed the RVR knowing it to be false, and that defendant Rendon "with bias and

5   deceit excluded exculpatory evidence" in the disciplinary hearing on the RVR.  Dckt. No. 122 at

6   12-13.  Plaintiff further claims that he was improperly assessed a 30-day credit loss for the

7   February 24, 1998 RVR.  Success on this claim would necessarily invalidate that credit loss, as

8   plaintiff's allegations are of the type of procedural defect for which a court would reinstate the

9   credits.  *See Balisok*, 520 U.S. at 646-47 (*Heck* barred plaintiff's § 1983 claim that a biased

10  hearing officer denied him the opportunity to present exculpatory evidence at his disciplinary

11  hearing, because a court would order restoration of the credits if plaintiff were successful).

12  While the predecessor magistrate judge on this case earlier concluded on a motion to dismiss that

13  *Heck* did not bar plaintiff's claims against other defendants because plaintiff did not allege a

14  credits loss and does not seek restoration of the lost credits (*see* Dckt. Nos. 73 at 12 and 78) the

15  record now establishes the contrary.  The undisputed facts on this summary judgment motion

16  now show that plaintiff did, in fact, suffer a credits loss as a result of the February 24, 1998

17  RVR.  The record also shows that plaintiff has not invalidated the disciplinary finding.

18  Therefore, under *Balisok*, plaintiff's claim is barred regardless of whether he seeks restoration of

19  the credits or damages.  520 U.S. 641.  Accordingly, summary judgment on plaintiff's claims

20  against defendants Colvin, Scarsella, and Rendon related to the February 24, 1998 RVR must be

21  granted.

22        Defendants next argue that plaintiff's claims for declaratory and injunctive relief[4] are

23  barred because plaintiff no longer resides at CSP-Sac, relying on *Dilley v. Gunn*, 64 F.3d 1365

24

25        [4] Plaintiff seeks a declaration that defendants' conduct was unlawful and an injunction
    ordering that defendants (1) cease retaliating against plaintiff, (2) allow plaintiff to communicate
    with other prisoners in connection with this case, and (3) expunge false RVRs from his file.
26  Dckt. No. 122 at 20-21.

(9th Cir. 1995).  In *Dilley*, the plaintiff had obtained summary judgment on a claim that the

defendant officials at Calipatria State Prison had violated his right of access to the courts by

failing to provide adequate law library access.  64 F.3d at 1367.  The court of appeals concluded

that the plaintiff's claim for injunctive relief became moot when he was transferred out of

Calpatria to another prison.  *Id.* at 1367, 1368.  In his opposition, plaintiff attests that his

declaratory and injunctive relief claims are not moot because he may be transferred back to CSP-

Sac.  Plaintiff provides specific facts indicating that he has, in fact, been close to such a transfer

in the past.  Dckt. No. 208 at 12; *see also* Dckt. No. 223.  Plaintiff has demonstrated a reasonable

expectation that he will be transferred back to CSP-Sac, and accordingly, his request for an

injunction ordering defendants to cease retaliating against him is not moot.  *See Dilley*, 64 F.3d

at 1369.

Moreover, *Dilley* (and *Johnson v. Moore*, 948 F.2d 517 (9th Cir. 1991), the other case

relied on by defendants) addressed solely injunctive relief claims.  Defendants have not proffered

an argument why plaintiff's declaratory relief claim should be considered moot.  Second,

plaintiff's claim for injunctive relief includes a request that the court order the allegedly false

RVRs expunged from his file.  This claim for relief is unlike the injunctions sought in *Dilley* and

*Johnson* (regarding law library access and regulations governing inmate books), as the RVRs

will follow plaintiff in his file regardless of transfer.

Defendants next argue that plaintiff's retaliation claims fail because he has been a prolific

litigator since the allegedly retaliatory actions, which shows that his First Amendment rights

were not chilled.

> Within the prison context, a viable claim of First Amendment retaliation entails
> five basic elements: (1) An assertion that a state actor took some adverse action
> against an inmate (2) because of (3) that prisoner's protected conduct, and that
> such action (4) chilled the inmate's exercise of his First Amendment rights, and
> (5) the action did not reasonably advance a legitimate correctional goal.

1    *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).[5]  While plaintiff may have since

2    pursued this and other litigation, the Ninth Circuit has held that under the fourth prong, a

3    retaliation plaintiff need not demonstrate that his speech was "actually inhibited or suppressed,"

4    because such a requirement would unjustly allow a defendant to escape liability simply because

5    the plaintiff was determined to persist in his protected activity.  *Id.* at 568-69.  Instead, the

6    plaintiff must simply show that the defendant's conduct would chill or silence a person of

7    ordinary firmness from future protected conduct.  *Id.*; *Mendocino Envt'l Ctr. v. Mendocino*

8    *County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (stating that a plaintiff does not need to

9    demonstrate that his exercise of First Amendment rights was chilled, but instead that defendants

10   intended to interfere with plaintiff's exercise of rights).  Plaintiff's prolific litigation since the

11   alleged misconduct at issue in this case does not establish the absence of a genuine dispute of

12   material fact over the fourth element listed in *Rhodes*, because plaintiff is not required to show

13   that his speech was actually chilled.  The undersigned cannot say as a matter of law that a

14   reasonable person would not have been chilled in his exercise of constitutional rights by

15   defendants' alleged misconduct.

16        Defendants next argue that plaintiff's due process claims must be summarily adjudicated

17   in their favor because those claims are governed by the First Amendment.  This argument is

18   complicated by the lack of specificity of whether plaintiff is asserting a substantive or procedural

19   due process claim.  The complaint suggests both.  Any substantive due process claim predicated

20   on these allegations is barred.  "[W]here a particular amendment provides an explicit textual

21   source of constitutional protection against a particular sort of government behavior, that

22   Amendment, not the more generalized notion of substantive due process, must be the guide for

23   analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of

24   Rehnquist, C.J.) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (internal quotation

25   _____

26        [5] Alternatively to the fourth element, the prisoner may simply show that he suffered "harm that is more than minimal."  *Id*. at 567 n.11.

marks omitted); *see also County of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998).  In the third

amended complaint's third cause of action, entitled "Retaliation, Due Process," plaintiff alleges

that defendant Adams composed a false RVR against plaintiff and that defendant Gold, as the

hearing officer on the RVR, acted with bias to exclude exculpatory evidence and found plaintiff

guilty in order to both retaliate and to obstruct plaintiff from presenting his claims.  Dckt. No.

122 at 14-16.  Under *Graham,* to the extent plaintiff's claims could be construed as alleging a

*substantive* due process claim, the First Amendment governs.

   However, fairly construed plaintiff's allegations may also support a *procedural* due

process claim.  *See Balisok*, 520 U.S. at 647 ("The due process requirements for a prison

disciplinary hearing are in many respects less demanding than those for criminal prosecution, but

they are not so lax as to let stand the decision of a biased hearing officer who dishonestly

suppresses evidence of innocence.").  Although the complaint does not specify whether plaintiff

alleges a violation of substantive due process or procedural due process, it contains language

suggesting either and *Graham* poses no bar to a procedural due process claim.  Accordingly, any

substantive due process claim included within plaintiff's third cause of action is barred, but

defendants have not shown on this motion that they are entitled to summary judgment as to

procedural due process.

   Defendants lastly claim that they are entitled to qualified immunity.  They argue that

evidence shows that they did not violate plaintiff's federally protected rights.  *See Saucier v.

Katz*, 533 U.S. 194 (2001).  In short, their qualified immunity argument is dependent upon the

success of their summary judgment arguments going to the merits of plaintiff's claims.

However, as discussed above, although one claim is barred by *Heck* and the substantive due

process claim must be presented as a First Amendment claim, defendants have not shown that

they are entitled to summary judgment on the question of whether they violated plaintiff's rights.

Their qualified immunity motion fails for the same reasons.

////

1    **III.     Motion to Declare Plaintiff a Vexatious Litigant**

2              In addition to seeking summary judgment, defendants ask the court to declare plaintiff a

3    vexatious litigant under Local Rule 151(b), which provides:

4              On its own motion or on motion of a party, the Court may at any time order a
             party to give a security, bond, or undertaking in such amount as the Court may
5              determine to be appropriate.  The provisions of Title 3A, part 2 of the California
             Code of Civil Procedure, relating to vexatious litigants, are hereby adopted as a
6              procedural Rule of this Court on the basis of which the Court may order the
             giving of a security, bond, or undertaking, although the power of the Court shall
7              not be limited thereby.

8    California Code of Civil Procedure § 391.1, in turn, provides:

9              In any litigation pending in any court of this state, at any time until final judgment
             is entered, a defendant may move the court, upon notice and hearing, for an order
10             requiring the plaintiff to furnish security. The motion must be based upon the
             ground, and supported by a showing, that the plaintiff is a vexatious litigant and
11             that there is not a reasonable probability that he will prevail in the litigation
             against the moving defendant.

12

13             Under that provision, a "vexatious litigant" is defined as (among other things), a person

14   who, "[i]n the immediately preceding seven-year period has commenced, prosecuted, or

15   maintained in propria persona at least five litigations other than in a small claims court that have

16   been (I) finally determined adversely to the person or (ii) unjustifiably permitted to remain

17   pending at least two years without having been brought to trial or hearing."  Cal. Civ. Proc. Code

18   § 391(b)(1).  Defendants ask the court to require plaintiff to post security of $6,100, arguing that

19   plaintiff has had at least thirteen lawsuits adversely determined against him in the seven years

20   preceding the motion. *See Stolz v. Bank of Am.*, 15 Cal. App. 4th 217, 225 (1993) (measuring the

21   seven year time period from the date the vexatious litigant motion is filed).

22             Defendants have not satisfied these standards.  In their attempt to establish that "there is

23   not a reasonable probability that [plaintiff] will prevail in the litigation," defendants raise the

24   same arguments which they advanced in support of summary judgment, and which have been

25   predominantly rejected for the reasons discussed above.  As defendants have not shown that

26   there is no reasonable probability that plaintiff will succeed in this case, the motion to declare

                                                    15

1  plaintiff a vexatious litigant should be denied.

2  **IV.    Recommendation**

3          Accordingly, it hereby RECOMMENDED that defendants' March 28, 2011 motion for

4  summary judgment (Dckt. No. 201) be granted in part, as follows:

5          1.   That summary judgment be granted in favor of defendants Colvin, Scarsella, and

6  Rendon on plaintiff's claims related to the February 24, 1998 RVR;

7          2.   That summary judgment be granted as to all defendants on any substantive due

8  process claim that may be alleged in the third amended complaint's third cause of action.

9          3.   That defendants' motion for summary judgment be denied in all other respects.

10          4.   That defendants' March 28, 2011 motion to declare plaintiff a vexatious litigant

11  (Dckt. No. 205) be denied.

12          These findings and recommendations are submitted to the United States District Judge

13  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14  after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

17  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

18  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

19  Dated:  February 25, 2013.

20

21                                          EDMUND F. BRENNAN
                                           UNITED STATES MAGISTRATE JUDGE
22

23

24

25

26