UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY JAMES COHEA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CHERYL K. PLILER, et al.,<br><br>　　　　　Defendants. | No. 2:00-cv-2799-GEB-EFB P<br><br><br>ORDER |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. He has filed a motion to obtain the attendance at trial of 16 incarcerated witnesses and seven unincarcerated witnesses. ECF No. 259. Defendants have filed an opposition. ECF No. 260. For the reasons that follow, the motion will be granted in part and denied in part.

**I.　　Incarcerated Witnesses**

Under this court's practice (and prior orders in this action), to obtain the presence at trial of an incarcerated witness, plaintiff must file an affidavit indicating whether the witness will testify voluntarily and what relevant facts the witness has to offer. *See, e.g.,* ECF No. 225 at 14-15. The court then exercises its discretion to determine whether to issue a writ of habeas corpus ad testificandum directing the production of an inmate witness for trial, based on a consideration of such factors as: (1) whether the prisoner's presence will substantially further the resolution of the case; (2) security risks presented by the prisoner's presence; (3) the expense of the prisoner's transportation and safekeeping; and (4) whether the suit can be stayed until the prisoner is

1

1  released without prejudice to the cause asserted." *Wiggins v. County of Alameda*, 717 F.2d 466,
2  468 n.1 (9th Cir. 1983) (quoting *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977)); *Walker*
3  *v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994).  As there is no information before the court
4  regarding the second, third, and fourth *Ballard* factors, the court's determinations here are guided
5  primarily by the first factor and the court's prior practice.
6        Plaintiff has filed affidavits concerning 16 incarcerated witnesses along with his motion
7  asking the court to secure their attendance at trial.  The court will grant plaintiff's motion as to
8  three of these 16 individuals and deny the motion as to the remaining individuals for the reasons
9  that follow.
10       As stated in the supplement to the pretrial order (ECF No. 270) issued by the district
11 judge, these claims are preserved for trial:
12       (1) Whether defendants Colvin, McCargar, and/or Adams retaliated against plaintiff in
13           violation of the First Amendment by issuing allegedly false disciplinary documents;
14       (2) Whether defendants Baughman, Micheels, Yamamoto, Akin, Scarsella, and/or Gold
15           retaliated against plaintiff in violation of the First Amendment by endorsing the
16           allegedly false disciplinary documents; and
17       (3) Whether defendants Gold, Micheels, and/or Akin violated plaintiff's procedural due
18           process rights under the Fourteenth Amendment through their conduct as hearing
19           officers at the hearings on the allegedly false disciplinary documents.
20 The court will now discuss whether plaintiff has made the necessary showing that each proposed
21 incarcerated witness can present facts relevant to these claims and whether the facts are such that
22 the witness' presence will substantially further the resolution of the case.
23       **A. Rex Chappell, CDCR # B42679**
24       Plaintiff attests that Mr. Chappell (spelled "Cahppell" in plaintiff's motion and in some
25 prior court documents) lived in the California State Prison, Sacramento ("CSP-Sac") B-Facility at
26 the time relevant to the complaint. ECF No. 259 at 3.  Mr. Chappell, a "jailhouse lawyer," was a
27 frequent user of the B-Facility law library, and "personally witnessed defendant Colvin's
28 retaliatory (falsely reported on Rule Violation Reports ('RVR')) treatment toward (against)

plaintiff." *Id.* According to plaintiff, Mr. Chappell "was personally aware (and witnessed) the retaliatory treatment by defendant McCargar, law library supervisor." *Id.* Plaintiff does not expand on these facts to inform the court what allegedly retaliatory conduct Mr. Chappell witnessed, or what facts he would offer that would show that the conduct was retaliatory. Accordingly, the court cannot find that Mr. Chappell's presence would substantially further the resolution of this case, and will decline to issue a writ of habeas ad testificandum to secure his presence at trial.

### B. Morris Rogers, CDCR #C71298

Plaintiff avers:

> Morris Rogers's name appears in the February 24, 1998 RVR hearing proceedings, testifying not only about that filed incident, but additionally testified that plaintiff always seems to have a problem getting into the library because [of] defendant Colvin's retaliatory treatment (to which Morris Rogers testified at the RVR hearing that Colvin's retaliatory treatment towards plaintiff was "worst treatment" than plaintiff was illustrating at the RVR hearing [sic].

ECF No. 259 at 4. Defendants argue that, because the court has determined that plaintiff's claim with respect to the February 24, 1998 hearing is barred by *Heck v. Humphrey*, plaintiff has provided minimal facts about Mr. Rogers's testimony at the RVR hearing, and plaintiff has provided insufficient (according to defendants) information about the foundation of Mr. Rogers's testimony, the court should not issue a writ to secure his appearance. The court finds, however, that plaintiff has provided sufficient facts showing that Mr. Rogers has relevant information to whether defendant Colvin bore some ill feeling toward plaintiff and thus, whether Colvin issued one (or more) RVRs to plaintiff to retaliate against him. Accordingly, the court will grant plaintiff's motion and issue a writ to secure Mr. Rogers's appearance at trial.

### C. James Wiley, CDCR #D18469

Plaintiff avers that plaintiff worked for many years with Mr. Wiley, attempting to get his criminal conviction overturned. ECF No. 259 at 5. According to plaintiff, Mr. Wiley personally witnessed

> much of both defendants Colvin and McCargar's retaliatory treatment for plaintiff's pursued litigation (and helping other prisoners with their litigation) and pursued administrative grievances about the conditions of confinement at [CSP-

3

> Sac]. . . [and] the retaliatory treatment that plaintiff received from defendant Adams and defendant Gold for plaintiff pursued administrative grievances.

*Id.* Plaintiff further declares that Mr. Wiley "personally witnessed plaintiff's retaliatory transfer to C-facility."

Plaintiff's claims regarding his transfer to C-facility are no longer part of this action. *See* ECF Nos. 174, 177. Plaintiff provides no facts regarding what allegedly retaliatory conduct Mr. Wiley witnessed or what facts he could offer to show that the conduct was retaliatory. Accordingly, the court concludes that Mr. Wiley's presence at trial would not substantially further the resolution of this case and declines to issue a writ to secure his attendance.

### D. Keith Evans, CDCR #J65474

Plaintiff's declaration regarding Mr. Evans is very similar to the declaration regarding Mr. Wiley. Importantly, the declaration only vaguely states that Mr. Evans personally witnessed some defendants' retaliatory treatment, but does not indicate what conduct Mr. Evans witnessed or what testimony he would offer that would indicate that the conduct was retaliatory. In addition, any testimony Mr. Wiley may offer about plaintiff's transfer to C-facility is no longer relevant to this action for the reasons stated above. The court finds that Mr. Evans's presence at trial would not substantially further the resolution of this case and declines to issue a writ to secure his attendance.

### E. Alonzo James Joseph, CDCR #K62045

Plaintiff avers that Mr. Joseph was "personally aware" of some defendants' retaliatory conduct towards plaintiff, but he does not provide any facts showing how Mr. Joseph gained that awareness or what testimony he could offer that would help plaintiff show that defendants' conduct was retaliatory. However, plaintiff also avers that Mr. Joseph witnessed plaintiff's confinement to quarters and deprivation of law library access as a result of some defendants' allegedly false discipline. These facts are relevant to whether plaintiff suffered harm as a result of defendants' alleged misconduct. The court therefore finds that Mr. Joseph's presence at trial would substantially further the resolution of the case and will issue a writ to secure his attendance.

### F. Douglas James, CDCR #H94727

Plaintiff avers that Mr. James used to be his cellmate and that he personally witnessed the "retaliatory treatment" of plaintiff by some defendants.  Plaintiff again fails to provide any facts showing what conduct Mr. James witnessed or what facts Mr. James could testify to that would show that the conduct was retaliatory.  Plaintiff also avers, however, that Mr. James witnessed plaintiff's confinement to quarters as the result of the alleged retaliation by defendants Adams and Gold.  These facts are relevant to whether plaintiff suffered harm as a result of defendants' alleged misconduct, but are cumulative of the relevant testimony plaintiff anticipates from Mr. Joseph.  Plaintiff also avers that Mr. James witnessed his transfer to C-facility, but plaintiff's claims regarding that transfer are no longer part of this case.  Because Mr. James has limited relevant testimony and that testimony is cumulative of another witness's testimony, the court concludes that Mr. James's presence at trial would not so further the resolution of the case as to outweigh the cost to the state to produce him.  Accordingly, the court declines to issue a writ to secure his attendance.

### G. Steve Martin, CDCR #D48283

Plaintiff avers that Mr. Martin was a law clerk in the CSP-Sac library who

> personally witnessed every one of the incidents plaintiff asserts occurred concerning defendants Colvin and McCargar's retaliatory falsified RVR accusations (centering around or occurring in [CSP-Sac]'s B-facility law library). In fact, Steve Martin worked in B-facility law library on each one of the days defendant McCargar's and defendant Colvin's retaliatory falsified RVRs were alleged to have occurred, as Steve Martin also personally witnessed these incidents occurrences [sic] which took place outside of the law library concerning plaintiff's failed attempts to gain access to the B-facility law library through defendant Colvin.

ECF No. 259 at 9.  Defendants argue that plaintiff has failed to provide sufficient facts showing that Mr. Martin has knowledge of defendant Colvin or defendant McCargar issuing allegedly false RVRs.  The court finds that plaintiff's facts – that Mr. Martin was present and witnessed the incidents that led the defendants to issue the RVRs at issue in this case – are sufficient to show that Mr. Martin possesses relevant information that would substantially further the resolution of this case.  Accordingly, the court will grant plaintiff's motion with respect to Mr. Martin and issue a writ of habeas corpus ad testificandum to secure his attendance at trial.

5

### H. Hunt, CDCR #C24128

The CDCR inmate locator database (http://inmatelocator.cdcr.ca.gov) reveals no inmate by the number C24128 currently incarcerated by the State of California.  Accordingly, the court cannot issue a writ to secure this inmate's attendance at trial.

### I. McGruder, CDCR #C64024

The CDCR inmate locator database reveals no inmate by the number C64024 currently incarcerated by the State of California.  Accordingly, the court cannot issue a writ to secure this inmate's attendance at trial.

### J. Nathaniel Wallace, CDCR #E63680

Plaintiff's declaration concerning Mr. Wallace states that plaintiff assisted him with his state habeas corpus writ and that he was "a personal witness to the retaliatory treatment" plaintiff received at the hands of defendants Colvin, McCargar, Adams, and Gold.  ECF No. 259 at 12.  Plaintiff avers that Mr. Wallace is also a "personal witness to the fact that" the "sole reason" for these defendants' actions was plaintiff's grievances.  *Id.*  Plaintiff provides no facts showing the circumstances under which Mr. Wallace witnessed the alleged retaliation or what facts he could testify to that would tend to show defendants' conduct was retaliatory.  Additionally, any testimony Mr. Wallace could offer about plaintiff's transfer to C-facility are not relevant to this action for the reasons stated with respect to other proposed witnesses, above.  Although plaintiff avers that Mr. Wallace witnessed plaintiff's confinement to quarters, this testimony would be cumulative of the testimony plaintiff proposes for Alonzo James Joseph.  The court finds that the burden of producing Mr. Wallace for trial outweighs the limited, and cumulative, relevant testimony he may offer.  Accordingly, the court declines to issue a writ to secure Mr. Wallace's attendance at trial.

### K. Applegate, CDCR #P12421

The CDCR inmate locator database reveals no inmate by the number P12421 currently incarcerated by the State of California.  Accordingly, the court cannot issue a writ to secure this inmate's attendance at trial.

/////

**L. Lopez, CDCR #H11564**

The CDCR inmate locator database reveals no inmate by the number H11564 currently incarcerated by the State of California. Accordingly, the court cannot issue a writ to secure this inmate's attendance at trial.

**M. Christopher Love, CDCR #D40953**

Plaintiff's declaration regarding Mr. Love states generally that he personally witnessed the "retaliatory treatment" of some defendants. Plaintiff again fails to provide any facts showing how Mr. Love witnessed such treatment or what information Mr. Love would provide at trial that would tend to show that any defendant retaliated against plaintiff. The court therefore finds that plaintiff has not provided sufficient information from which the court can conclude that Mr. Love has relevant information that would substantially further the resolution of this case. Accordingly, the court declines to issue a writ to secure Mr. Love's attendance at trial.

**N. Anthony Evans, CDCR #C30180**

The CDCR inmate locator database reveals no inmate by the number C30180 currently incarcerated by the State of California. Accordingly, the court cannot issue a writ to secure this inmate's attendance at trial.

**O. Juan Hilario Bautista, CDCR #K18082**

Plaintiff avers that Mr. Bautista personally witnessed the incident underlying the January 15, 1999 RVR issued to plaintiff by defendant Colvin. According to plaintiff, defendants Colvin and McCargar "used" Mr. Bautista "to boost their retaliatory falsifying of the RVR accusations against plaintiff, using [him] as the false source." ECF No. 259 at 17. Defendants argue that "there is no January 15, 1999 RVR that is a subject of this action," citing generally to the pretrial order (ECF No. 255). It is unclear why defendants believe that the January 15, 1999 RVR is no longer part of this action based on the pretrial order. The pretrial order noted that the facts included therein were taken solely from defendants' recitation of facts. ECF No. 255 at 2 n.1. It did not limit plaintiff's claims by the facts included therein. The complaint alleges a claim concerning the January 15, 1999 RVR that has not been dismissed or summarily adjudicated in favor of defendants and therefore remains to be adjudicated at trial. ECF No. 122 at 11.

7

1  Plaintiff's facts are sufficient to show that Mr. Bautista witnessed the incident underlying the
2  January 15, 1999 RVR and thus will substantially further the resolution of the case by providing
3  information about that incident.  Accordingly, plaintiff's motion to secure Mr. Bautista's
4  attendance at trial will be granted.

### P.  Coleman, CDCR #E86262

The CDCR inmate locator database reveals no inmate by the number E86262 currently incarcerated by the State of California.  Accordingly, the court cannot issue a writ to secure this inmate's attendance at trial.

## II.  Unincarcerated Witnesses

Plaintiff asks the court to order the U.S. Marshal to serve subpoenas on seven unincarcerated witnesses without payment of witness fees and travel expenses.  As the court has previously informed plaintiff (ECF No. 255 at 16), "even a plaintiff proceeding in forma pauperis must tender the fees" because "[n]o statute authorizes the use of public funds" to cover these costs.  *Id.*  The Ninth Circuit has held that the in forma pauperis statute, 28 U.S.C. § 1915, does not authorize the expenditure of public funds to pay for witness fees and expenses.  *Tedder v. Odel*, 890 F.2d 210, 211-12 (9th Cir. 1989); *see also Dixon v. Ylst*, 990 F.2d 478, 480 (9th Cir. 1993).  Accordingly, plaintiff's motion is denied.  If plaintiff wishes to obtain the presence at trial of an unincarcerated witness, he must follow the instructions provided in the pretrial order, including tendering through the U.S. Marshal a money order payable to the witness in the amount of the daily witness fee ($40.00) plus the witness' travel expenses.

## III.  Order

For the foregoing reasons, it is hereby ORDERED that:

1. Plaintiff's motion to secure the attendance at trial of various incarcerated witnesses (ECF No. 259) is granted in part (as to witnesses Morris Rogers, Alonzo James Joseph, Steve Martin, and Juan Hilario Bautista) and is otherwise denied.

/////
/////
/////

2. Plaintiff's motion for an order requiring the U.S. Marshal to serve seven subpoenas on unincarcerated witnesses without payment of the witness fees and travel expenses (ECF No. 259) is denied.

DATED: June 5, 2015.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE